IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

AMY ROBERTSON O/B/O
C.C., A MINOR

        Plaintiff,

v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 6:15-cv-903-CL

**OPINION AND
ORDER**

CLARKE, Magistrate Judge.

Plaintiff Amy Robertson seeks judicial review of the Social Security Commissioner's final decision denying the application of her minor son, C.C., for Supplemental Security Income under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g), and reviews to determine that the Commissioner's decision was based upon substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). All parties have consented to entry of final judgment by a Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Commissioner's decision should be REVERSED and REMANDED for the immediate calculation and award of benefits.

## I.    Factual and Procedural Background

C.C. was born in 2001, and alleges disability since age seven.  His 2009 application for SSI is based upon a combination of attention deficit hyperactivity disorder ("ADHD"), adjustment disorder with depressed mood, oppositional defiant disorder, enuresis (bedwetting), and associated behavioral issues.    The Commissioner denied his initial application.    An Administrative Law Judge ("ALJ") held a hearing and again found him not disabled on July 29, 2010.  Admin. R. 17-30; 344-57.  C.C. appealed to this Court.  On August 14, 2013, this Court remanded the matter for further proceedings, directing the Commissioner to develop the record. *Id.*  367-99.  A different ALJ held a second hearing on July 14, 2014 (*id.* at 319), and again found C.C. not disabled on January 23, 2015.  *Id.* at 298-314.  C.C. is now approximately fifteen years old, and his application for childhood disability benefits has been pending for at least seven years.

## II.    Disability Analysis for Children

The Commissioner evaluates childhood disability under a three-step regulatory process.  20 C.F.R. § 416.924.  The Commissioner determines if the child (1) has a "severe" impairment or combination of impairments; (2) that meets or medically equal a "listed" impairment; or (3) "functionally equals" a "listed" impairment.  20 C.F.R. § 416.924(a).    Childhood disability determinations utilize a variety of evidential sources, including medical records, test scores, and information from parents, caregivers, teachers, and school personnel.  20 C.F.R. § 416.924(a). Though limitations must result from a medically determinable impairment, the Commissioner looks to a child's functioning in comparison to his peers.  20 C.F.R. § 924(b)(1-3).  Here, analysis is directed to six domains: (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(1).

## III.    The ALJ's Findings

The ALJ found C.C.'s attention deficit hyperactivity disorder, adjustment disorder with depressed mood, oppositional defiant disorder, and nocturnal enuresis (bedwetting) to be "severe" impairments pursuant to 20 C.F.R. § 416.924(c).  Admin. R. 301.  She found C.C.'s alleged depressive mood disorder and intellectual disability nonsevere.  *Id.* at 302.  The ALJ subsequently found that C.C.'s impairments did not meet or medically equal a listing.  *Id.* Finally, she found that his impairments did not functionally equal the severity of any listed disorder, and therefore found him not disabled.  *Id.* at 303-04.

## IV.    Analysis

Ms. Robertson, on behalf of C.C., challenges the ALJ's finding that C.C. did not meet, equal, or functionally equal the regulatory listings.  She specifically argues that the ALJ failed to give appropriate weight to her own testimony and the opinions of C.C.'s treating psychiatrist, treating physician and an evaluating psychologist, and failed to properly weigh the testimony of his first grade teacher in the context of the record as a whole.  Throughout, she argues that the ALJ failed to comply with this Court's August 14, 2013 remand order, and asserts that C.C. is disabled because his impairments and their effects functionally equal childhood disability listings.

### A. Ms. Robertson's Testimony

C.C.'s mother, Amy Robertson, testified at length at both his July 20, 2010 hearing and his July 18, 2014 hearing.  She also submitted numerous reports and questionnaires to the record.

///

///

### 1.    2010 Hearing Testimony

Ms. Robertson's July 2010 testimony stated that C.C. had twice been suspended from school, and was "kicked off" the school bus.  Admin. R. 415.  She stated that C.C. has a "different way of thinking," that he does not have a lot of friends, and cannot keep friends. *Id.* at 417.  Here she explained that C.C. hits and yells at other children, says "really mean things to them," and, in one instance, had a playmate for "like two days" whom he then punched in the stomach, resulting in a police call. *Id.* at 421, 424.  Because of this behavior C.C. "doesn't have anybody." *Id.* at 424.  C.C. also grabs his younger brother's ears "really tight" and has "choked him before." *Id.* at 424-25.  Ms. Robertson, therefore, remains in the room when C.C. is with his brother. *Id.* at 425.

Ms. Robertson also stated that C.C. set a bed on fire and, despite the fire, continued to play with Legos on the bed. *Id.* at 423.  She reported that C.C. ripped the shell and eyes off of a snail, *id.* at 417, squeezed a gerbil and threw it against a wall, *id.* at 420, and rips wings off flies. *Id.* at 421.    Ms. Robertson stated that this "really worries me." *Id.* at 525.  Ms. Robertson explained that she cannot allow C.C. unsupervised time with family pets, and that he breaks toys and scraped drywall off the house. *Id.* at 417-18.

Ms. Robertson also testified that C.C. has problems with focus and attention "all the time," and that his teacher makes him sit outside the door at school because he is disruptive in class. *Id.* at 419.  C.C. cannot stay on task in performing simple household chores without correction and re-guidance because "everything distracts [C.C.]." *Id.* at 419-20.  When he cannot "figure something out" he throws objects, walks away, and becomes angry "at everybody in general." *Id.* at 420.  In response to questioning, she affirmed that C.C. has a problem understanding right from wrong. *Id.* at 422.

Page 4 – **OPINION & ORDER**

## 2.    2014 Hearing Testimony

At C.C.'s 2014 hearing, Ms. Robertson testified that C.C. was now in middle school, and that his difficulties in staying on task in school were "harder" for the middle school to handle. Admin. R. 328.  In response to questioning, she affirmed that she was scared that C.C.'s "horseplay" behavior would "cross the line" into pushing someone down stairs or injuring someone. *Id.* at 328. Ms. Robertson testified that, earlier in the day, C.C. was "stomping" on his sleeping younger brother following a dispute regarding a ring. *Id.* C.C. refused to go to school for some time, which required a home visit from school personnel. *Id.* at 329. Ms. Robertson stated she was discussing initiation of an IEP (Individualized Education Plan) [1] with the school because of C.C.'s behavior, but that the issue could not be addressed until C.C.'s attendance normalized. *Id.* at 330. Finally, Ms. Robertson testified that it appeared to her that C.C.'s medication was "either wearing off or it's just not working," *id.* at 333, and that the community counseling program treating C.C. felt that he was not progressing. *Id.* at 334.

## 3.    Disability Function Reports

Finally, Ms. Robertson submitted various forms describing C.C.'s impairments and behavior in conjunction with his disability application and appeals. Here she stated that "students['] parents at school are threatening to take [their] kids out of school because of his behavior" (*id.* at 156), and "he's everywhere . . . . He can pay attention for maybe 5 minutes at a time." *Id.* at 143. An undated report in association with C.C.'s appeal states that, beginning on approximately April 1, 2009, "now he has real bad night terrors and stomach aches." *Id.* at 180. Ms. Robertson finally wrote that it is "hard to cope at school." *Id.* at 182.

---

[1] "IEP" refers to an "Individualized Education Program" pursuant to the Individuals with Disabilities in Education Act ("IDEA"). The IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with 20 U.S.C. § 1414(d)." 20 U.S.C. § 1401 (14). The fact that a child claimant receives special education services is irrelevant to determination of disability. 20 C.F.R. § 416.924a(b)(7)(iv).

### 4.    Analysis

The ALJ described Ms. Robertson's testimony:

> At the hearing, Ms. Robertson called ADHD as the big issue for
> her son. She reported the claimant could not be kept on task. Her
> testimony further indicated that the school wanted the claimant to
> have an independent[2] education plan (IEP). By her report, the
> claimant's math skills were quite low and he was not doing well at
> school.   Although he had a couple of friends, he had trouble
> interacting with other children, as evidenced by hurting younger
> children such as his brother.  Ms. Robertson also provided the
> information that her son was kicked out of the pool indefinitely at
> Coquille while visiting his grandmother. At that time, he was also
> involved in trouble with the police for damaging a park fence.

Admin. R. 304. This does not fully surmise Ms. Robertson's testimony, described above.
Furthermore, the ALJ gave no reasons for rejecting this testimony, or failing to give it full
weight. *Id.* Instead, the ALJ issued a boilerplate finding that these statements were "not entirely
credible for the reasons explained below." *Id.* The ALJ then stated that the "evidentiary record
fails to support the degree of limitation alleged by claimant's mother," and proceeded without
further reference to Ms. Robertson's testimony. *Id.* at 304-05.

The regulations direct that the ALJ consider lay testimony addressing the severity of a
claimant's limitations, "or, if you are a child, how you typically function compared to children
your age who do not have impairments." 20 C.F.R. § 416.913(d). This direction is emphasized
in determination of childhood disability claims; here, evidence from parents is a "basic
consideration." 20 C.F.R. § 416.924a(1). This is because "every child is unique, so the effects
of . . . impairment(s)" on a child's functioning "may be very different from the effects the same
impairment(s) might have on another child." *Id.* at § (2). Further, "parents and other caregivers

---

[2] See note 1.

can be important sources of information because they usually see [the claimant] every day." *Id.* at § (2)(i).

The ALJ must give reasons "germane" to the witness in rejecting lay testimony, and such testimony "*cannot* be disregarded without comment." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) (emphasis original). Here, the ALJ made no effort to either assess Ms. Robertson's testimony in its entirety or clearly set out the manner in which other evidence of record contradicts her testimony regarding C.C.'s behavior and associated limitations. The evidence the ALJ purported to rely upon, discussed below, supports – rather than undermines – Ms. Robertson's testimony. The ALJ's truncated and boilerplate evaluation cannot now constitute a "germane" reason for rejecting Ms. Robertson's testimony, and therefore is not sustained.

### B.  Physician Opinions

The Ninth Circuit distinguishes between treating, examining, and reviewing physicians in its review of the Commissioner's disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion "must be given controlling weight if that opinion is well supported and not inconsistent with other substantial evidence in the case record." *Edlund v. Massinari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The ALJ is tasked with resolving "conflicting medical evidence" on the matter, but "must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). An examining physician's opinion is, in turn, accorded greater weight than that of a reviewing physician, and the ALJ must set out "specific, legitimate" reasons for rejecting the opinion of an examining physician for that of a reviewing physician. *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester*, 81 F.3d at 831).

### 1. Treating Psychiatrist Franc Strgar, M.D.

Child psychiatrist Dr. Strgar met with C.C. and his family members in 2012 and 2013. Admin. R. 544-49. The record indicates that Dr. Strgar treated C.C. on at least one additional interval during this period. *Id.* at 547. In 2014, Ms. Robertson testified that C.C. had been seeing Dr. Strgar for "I'd say a year and a half." *Id.* at 326.

Dr. Strgar diagnosed ADHD and oppositional defiant disorder, and noted a rule-out mood disorder impression on August 24, 2012. *Id.* at 545. Dr. Strgar assessed a Global Assessment of Functioning ("GAF")[3] score of 60. *Id.* at 546.

On September 23, 2013, Dr. Strgar made the same diagnoses, and additionally noted "problems with primary support group, social problems, academic problems." *Id.* at 548. Here Dr. Strgar discussed C.C.'s evident distress, and history of worsening behavior difficulties, where C.C. was noted to be "defiant, irritable, and even aggressive." *Id.* at 547. Dr. Strgar assessed a GAF score of 50-55. *Id.* at 548.

Finally, on July 16, 2014, C.C.'s attorney submitted a questionnaire to Dr. Strgar, asking "Do you agree with Dr. Greneir that [C.C.] is "markedly" limited in his ability to Attend and Complete Tasks, and Interact and Relate with Others?" *Id.* at 554. Dr. Strgar checked "yes" and provided a narrative explanation citing C.C.'s diagnosis, longitudinal history, and stating "C.C. has not realized significant improvement" regarding his attentional issues, and that C.C. does not relate appropriately to others in multiple settings. *Id.* at 554-555.

The ALJ gave "partial" weight to Dr. Strgar's opinion, stating that evidence did not support a marked limitation in C.C.'s ability to attend and complete tasks. *Id.* at 305. This

---

[3] The Global Assessment of Functioning is a standardized measure of a clinician's judgment of a claimant's overall level of functioning. It is included in standardized psychological reports. Am. Psychiatric Assoc., *Diagnostic and Statistical Manual*, Fourth Ed., Text Rev. (2000), p. 32.

analysis does not sufficiently discredit Dr. Strgar's opinion. The ALJ must give clear and convincing reasons for rejecting a treating physician's opinion, *Thomas*, 278 F.3d at 956-57, and must generally give more weight to the opinion of a medical specialist. 20 C.F.R. § 416.927(d)(5). Here, the ALJ did not specify contemporary and probative evidence contradicting Dr. Strgar's opinions rendered during the period during which he treated C.C. The ALJ therefore failed to properly reject this opinion.

The ALJ separately addressed Dr. Strgar's global assessment of functioning findings. Admin. R. 305. She cited Dr. Strgar's GAF analysis, but did not acknowledge that it was embedded in Dr. Strgar's opinion, instead stating "GAF scores are highly subjective, intertwining psychological symptoms, physical impairments, and socioeconomic factors." *Id.* She concluded, "Therefore, I cannot place a high degree of reliance on these scores or on the opinions associated with them." *Id.* This cursory assessment fails to acknowledge that Dr. Strgar made a customary GAF analysis in the context of standardized clinical exam. Further, it provides no analysis regarding the extent to which the GAF assessment is supported by Dr. Strgar's opinion as C.C. treating specialist.

In summary, the ALJ's determination that Dr. Strgar's opinion merited "partial" weight only is not sustained.

## 2. Treating Physician Catherine Grenier, M.D.

Pediatrician Dr. Grenier and her colleagues have provided C.C.'s primary care for most of his childhood and throughout the period under review. *See id.* at 286-94; 488-413, 514-541. The Ninth Circuit allows consideration of continuity of care and clinic staffing in assessment of a treating physician's opinion, *Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003), and a general physician is competent to assess psychiatric diagnoses pertaining to disability

Page 9 – **OPINION & ORDER**

determinations. *Sprague v. Bowen*, 812 F.3d 1228, 1232 (9th Cir. 1987) (affirmed by *Lester v. Chater*, 81 F.3d at 833).

Ms. Robertson testified at C.C.'s 2010 hearing that C.C. sees Dr. Grenier "once every five months" for management of his mental health issues. Admin. R. 416. She stated at the second hearing, in 2014, that Dr. Grenier referred C.C. to Dr. Strgar for mental health treatment, but continued to provide generalized pediatric care. *Id.* at 326.

This Court's August 14, 2013 remand order extensively discussed Dr. Grenier's earlier treatment records and her associated July 28, 2010 disability opinion. *Id.* at 373-76, 385-86. The Court noted that Dr. Grenier's 2010 disability opinion was limited, but stated that it and other evidence triggered the ALJ's duty to develop the record. *Id.* at 396. It specifically ordered the Commissioner to:

> [O]btain and evaluate: (1) an explanation from Dr. Grenier for her check-box answers on the form supplied by C.C.'s attorney indicating C.C. has a marked limitation in the ability to attend and complete tasks, and to interact and relate with others; and that C.C.'s marked impairment continues despite medication . . .; (2) an explanation for the reason Dr. Grenier stopped treating C.C.; (3) a more recent evaluation report and/or testimony by Dr. Grenier, or another acceptable medical source with appropriate training and experience, regarding C.C.'s functional limitations . . . .

Admin. R. 398. The record shows that the matter was subsequently discussed at C.C.'s July 18, 2014 hearing. The ALJ addressed C.C.'s mother, Ms. Robertson:

> And when I looked at this, I saw Dr. [Grenier], one of her statements is something that the District Court really honed in on, and they said, try to get more information from Dr. Grenier. And I know because she was our pediatrician at the time too, that she's retired. Is that right? Is she retired?

*Id.* at 325. Ms. Robertson replied, "I don't think so because they just [sic] seen her a couple months ago for a checkup." The ALJ replied, "Really?" and reported that her own husband had

Page 10 – **OPINION & ORDER**

stated Dr. Grenier was retired. *Id.* This conversation continued, and the ALJ concluded, "I'm thinking what we may need to do, after the hearing, is ask her for some more information" in light of this Court's remand order. *Id.* at 326. Ms. Robertson affirmed that C.C. is still under Dr. Grenier's care. *Id.* She also stated that Dr. Grenier referred C.C. to Dr. Strgar approximately a year and a half ago as well, but had recently seen C.C. for an annual checkup. *Id.* at 327. C.C.'s attorney later submitted the updated medical records. Admin. R. 463-543.

On July 28, 2010, Dr. Grenier completed a form, which stated that, in reference to the Commissioner's regulatory definitions, she found C.C. "markedly" limited in his ability to "attend and complete tasks" and "interact and relate with others." *Id.* at 207. Dr. Grenier also affirmed that medication improves these symptoms, but that C.C. "still demonstrates marked levels of impairment despite medication." *Id.* at 208.

On July 16, 2014, Dr. Grenier submitted a letter of clarification to the record regarding her July 28, 2010 statement, which addresses C.C.'s ability to attend and complete tasks:

> [C.C.] has had difficulty with school performance this year. Mother reported at 4/14 visit that he had 2 D's and 2 F's. He is currently being treated for ADHD by psychiatrist Dr. Strgar who may be able to produce more detailed information regarding these [illegible].

Admin. R. 543.

The ALJ gave only "some" weight to Dr. Grenier's opinion because she "failed to provide any evidence to establish her contentions of marked limitations . . . ." *Id.* at 305. Dr. Grenier's longitudinal record cited above contradicts this finding. Dr. Grenier's opinions are supported by voluminous treatment notes and, by her own reference, also supported by Dr. Strgar's concurrent opinions. The ALJ's evaluation of treating physician Dr. Grenier's opinion therefore is not based upon clear and convincing evidence, and is not sustained.

Page 11 – **OPINION & ORDER**

### 3.    Examining Psychologist Pamela Roman, Ph.D.

Dr. Roman evaluated C.C. on or about February 6, 2014,[4] when C.C. was 11 years old. Admin. R. 456-61.  She performed the evaluation at the request of the Oregon Department of Health and Human Services, and indicted that she reviewed a variety of C.C.'s medical records from numerous medical sources which she clearly identified. *Id.* at 456.  Dr. Roman also administered clinical tests and performed her own clinical evaluation, *id.* at 457-59, and stated that "information presented during the interview was consistent with the medical evidence reviewed from 2008." *Id.* at 459.

Dr. Roman assessed ADHD, adjustment disorder with depressed mood, "enuresis [bedwetting] nocturnal only," and a rule-out diagnosis of "intellectual disability." *Id.* Regarding C.C.'s interpersonal issues, Dr. Roman stated that he has "set two fires and pinches his mother's dog's ears," and mocked a classmate in a school program and was asked not to return. *Id.* She also stated that C.C.'s mother reported that he has been depressed since his brother's death three years prior, and described him as "being worried, fearful and irritable at times." *Id.*

The ALJ briefly noted this report, emphasizing that it was based in part upon statements made by C.C.'s mother, without "testing and further analysis," and stated that it "provides a 'snapshot' of the claimant's condition at a particular time, rather than a longitudinal view of his functional level." *Id.* at 305.

This summation does not reflect the record.  Dr. Roman clearly stated that she based her report in part upon a longitudinal review of C.C.'s 2008 medical records. *Id.* at 459.  The ALJ's analysis therefore does not reflect Dr. Roman's opinion.  The ALJ also failed to properly

---

[4] Dr. Roman's report left the evaluation date blank, but the associated invoice indicates February 6, 2014. Admin. R. at 456, 461.

discount Ms. Robertson's testimony, discussed above. Contrary to the ALJ's findings, Dr. Roman's opinion pertaining to C.C.'s functioning and behavioral issues is supported. For these reasons, the ALJ's conclusion regarding Dr. Roman's opinion is not sustained.

### D. School Personnel

The Commissioner's regulations specifically instruct that "other" sources relevant to childhood disability determinations include educational personnel, "for example, school teachers, counselors" and other educational staff. 20 C.F.R. § 416.924(d)(2).

This Court's August 2013 remand order discussed an April 2009 report produced by C.C.'s first grade teacher, Ms. Ellenbecker (Admin. R. 380), and directed that the ALJ obtain "a more recent report from C.C.'s teachers, especially after first grade." *Id.* at 398. Attempts to obtain further teacher reports were unsuccessful because the requests were directed to schools in which C.C. was not enrolled, and staff was unavailable to answer requests. *See id.* at 164, 306.

The second ALJ's 2015 opinion now under review is again limited to Ms. Ellenbecker's 2009 report. *Id.* at 307, 308. The ALJ gave "great weight to the information provided" by Ms. Ellenbecker because she "answered the questions on the form and then provided additional information in support of her conclusions." *Id.* at 306. While the ALJ correctly noted that further educator questionnaire responses were unavailable, *id.*, this absence of evidence does not point to a finding that the first-grade teacher's report is the most probative evidence of record. Ms. Ellenbecker's report is the only evidence of record to which the ALJ gave "great" rather than "partial" or "some" weight.

The result is nonsensical; here, the ALJ gave more evidentiary weight to a report produced by now-fifteen year old claimant's first grade teacher than to medical and other evidence addressing C.C.'s functioning in the intervening period. This is contrary to controlling

Page 13 – **OPINION & ORDER**

law, which direct that greater weight be given to treating medical source opinions, *see Thomas*, 278 F.3d at 956-57 (instructing that an ALJ must provide clear and convincing reasons for rejecting a treating source opinion), and contrary to any common sense analysis of C.C.'s developmental changes throughout the period under review. This reasoning is not sustained.

### E. Childhood Disability Functional Analysis

The regulations clearly instruct that the Commissioner must consider a medical source "opinion about your functional limitations compared to children your age who do not have impairments" in the six specified domains pertaining to childhood disability. 20 C.F.R. § 416.913(c)(3). If a child is determined to have "marked" impairment in two of the six indicated domains, or "extreme" limitation in one of the six, the child is deemed to have impairment that is functionally equivalent to regulatory disability listings. 20 C.F.R. § 416.926a(1)(d). The relevant domains are "attending and completing tasks" and "interacting and relating to others." 20 C.F.R. § 416.926a(1).

While the ALJ found C.C. "markedly" impaired in "interacting and relating with others," Admin. R. 310-11, she concluded that C.C. had "less than marked" limitation in "attending and completing tasks." *Id.* at 308-09. The ALJ noted Ms. Robertson's September 2009 statement that C.C. was "everywhere" and that he could not pay attention even with ADHD medication. *Id.* at 308. The ALJ then found that C.C.'s first grade teacher, Ms. Ellenbecker, reported that C.C.'s attention was "age-appropriate," and that Disability Determination Services reviewing psychologists Drs. Lahr and Henry found C.C.'s difficulties "lowered to 'very few problems' when he was on mediations. They cited teacher description of the claimant as calm and attentive." *Id.* at 309.

This determination does not properly account for the evidence discussed under the legal standards above. Treating physician Dr. Strgar found C.C. "markedly" limited in attention and interacting with others. *Id.* at 555. Longtime treating physician Dr. Grenier also stated that he had "marked" limitation in the same areas. *Id.* at 207. Therefore, the ALJ's finding that C.C. had "less than marked" limitation in "attending and completing tasks" is not sustained.

## V.   **Remand**

The Court has discretion in determining remand parameters. *Treichler*, 775 F.3d at 1099-1100; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 513 U.S. 1038 (2000). The "ordinary remand" rule instructs that the proper course is, generally, to remand to the agency for additional proceedings. *Treichler*, 775 F.3d at 1099. 42 U.S.C. § 405(g), sentence four, instructs that the reviewing court may "affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing."

A remand for award of benefits is appropriate where further administrative proceedings would serve no useful purpose and the record has been fully developed. *Treichler*, 775 F.3d. at 1100; *Strauss v. Comm'r*, 635 F.3d 1135, 1138-139 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). Here, the Court must conduct a "credit-as-true" analysis. *Strauss*, 635 F.3d at 1138.

The "credit-as-true" doctrine directs that evidence be credited and an immediate award of benefits where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues requiring resolution before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled should the evidence be credited. *Treichler*, 775 F.3d at 1101-02. The doctrine is not mandatory; it allows the Court discretion in determining whether to enter an award of benefits

upon reversing the Commissioner's decision. *Id.* at 1102; *see also Connett v. Barnhartt*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 871, 348 (9th Cir. 2003) (*en banc*)). The Court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's analysis of the opinions of Drs. Strgar, Grenier, and Roman, as well as testimony proffered by Ms. Robertson and Ms. Ellenbecker, is erroneous for the reasons established above. The ALJ's subsequent finding that C.C. did not functionally equal a listed disorder at step three in the proceedings is consequently flawed.

In determining whether to award benefits or remand the matter for further proceedings, the Court must finally determine whether "outstanding issues remain in the record" under the third prong of the credit-as-true analysis. *Treichler*, 775 F.3d at 1101; *see also Strauss*, 635 F.3d at 1138. While the Commissioner requests remand for proceedings rather than benefits, she does not articulate any theory that the record requires further development. She states only that Ms. Robertson has failed to show that C.C. has "marked limitation in two domains, or "extreme" limitation in one. Def.'s Br. 10.

The record discussed above shows that the opinions of Drs. Strgar, Grenier, and Romans, as well as Ms. Robertson's testimony, point to a finding of "marked" limitation in the domains of attention and relating to others. The Commissioner's regulations direct a finding of childhood disability if the evidence shows "marked" limitation in two or more functional domains. 20 C.F.R. § 416.924(d)(1). The Court is additionally mindful of the administrative delays now encompassing much of C.C.'s childhood.

The indicated opinions are therefore credited as true, and a finding of disability is consequently entered. For all of these reasons, the matter is remanded for the immediate calculation and award of benefits pursuant to 42 U.S.C. § 405(g), sentence four.

DATED this _____ day of August, 2016.

_____

MARK D. CLARKE
United States Magistrate Judge